IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| ROY DEAN SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 3:13-cv-00294-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The plaintiff, Roy Dean Smith, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Mr. Smith timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Smith was forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a seventh grade education. (Tr. at 43.) His

past work experiences include employment as an air conditioning repairman, a refrigerator repairman, and a fast food cook. (Tr. at 56.) Mr. Smith claims that he became disabled on April 9, 2010 (Tr. at 117), due to a broken femur, hip, and second vertebra in the neck suffered in a car accident. (Tr. at 138.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20

C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Smith meets the "insured status requirements of the Social Security Act through December 31, 2014." (Tr. at 26.) He further determined that Mr. Smith has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to

the ALJ, Plaintiff's left femur fracture, status post intramedullary nailing; left acetabulum fracture, status post open reduction internal fixation; and trochanteric tendonitis are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27.) The ALJ did not find Mr. Smith's allegations to be totally credible, and he determined that he has the following residual functional capacity:

> he is limited to sedentary work, frequently lifting up to ten pounds; he can sit with normal breaks for a total of six hours in an eight-hour workday, no greater than two hours at a time without the ability to stand and change positions; he can stand and/or walk for a total of two hours in an eight-hour workday, no greater than fifteen minutes at a time without the ability to stand and change positions; no limitations in the upper extremities for gross manipulation or fine handling; pushing and pulling of foot controls would be limited to occasionally; occasionally climb ramps and stairs; occasionally balance, stoop (but not repetitively), kneel, crouch; no work on ladders, ropes, scaffolds; no manipulative limitations; avoid concentrated exposure to extreme cold, wetness, and humidity; no heavy vibratory-type jobs; no work around dangerous machinery or unprotected heights; and the claimant would be limited to occupations that he could perform with the use of only one upper extremity because of the use of a cane.

(Tr. at 27-28.)

According to the ALJ, Mr. Smith is unable to perform any of his past relevant

work, he is a "younger individual," and he has a "limited education," as those terms are defined by the regulations. (Tr. at 31.) He determined that transferability of job skills is not an issue in this case because the Medical-Vocational Rules framework supports a finding that the Plaintiff is "not disabled." (*Id.*) The ALJ found that Mr. Smith has the residual functional capacity to perform a reduced range of sedentary work. (Tr. at 31-32.) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.25 and vocational expert testimony as a guideline for finding that there are a number of jobs in the national economy that the plaintiff is capable of performing, such as information clerk, assignment clerk, and claims clerk. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 9, 2010, through the date of this decision." (Tr. at 32.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Mr. Smith alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Plaintiff contends that substantial evidence does not support the ALJ's RFC finding because it was not based upon a medical source statement, because the ALJ did not order a consultative examination and because the ALJ did not ask for the opinion of a medical expert. (Doc. 9 at 8.) Second, he believes that the ALJ erred in failing to find a threshold period of disability of at least twelve months. (Doc. 9 at 5.) The Court will address these arguments in turn.

### A. The ALJ's RFC Assessment

Plaintiff contends that substantial evidence does not support the ALJ's RFC finding because it was not based upon a medical source statement (MSS). The plaintiff argues that an MSS is necessary to support the ALJ's RFC because the ALJ is required to "review and accord weight to medical opinions" and "avoid substituting his or her judgment for that of a physician." (Doc. 9 at 8.) An MSS is a "medical opinion[] submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment[], in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR 96-5p, 61 Fed. Reg. 34471, 34473 (July 2, 1996).

The plaintiff carries the general burden of proving his disability. 20 C.F.R. § 404.1512(a). The determination of an RFC is an administrative assessment, rather than a medical issue. SSR 96-5p, 61 Fed. Reg. 34,471, 34,472 (July 2, 1996). The Commissioner's regulations make it clear that the responsibility for determining the RFC is the ALJ's, and it is based on all the evidence in the record rather than solely medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). The lack of an MSS on what the claimant can do despite his impairments will not make the record incomplete. 20 C.F.R. § 404.1519n(c)(6). An MSS from a physician is not required when there is sufficient other evidence in the record to support the ALJ's determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (the ALJ's discrediting of the treating chiropractor's medical opinion did not invalidate the ALJ's opinion on disability because there was substantial other evidence to find that the claimant was not disabled); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (ALJ properly determined claimant's ability to do light work based on claimant's testimony, medical history, and activities, without an MSS).

In the instant case, sufficient evidence existed in the record to support the ALJ's RFC assessment. First, the plaintiff's medical treatment history showed that Plaintiff's surgery was generally successful in relieving his symptoms. (Tr. at 273-93, 317-21.)

Plaintiff began seeing Dr. Griffin, his treating physician, after he was discharged from the hospital following the accident. On the first visit of May 5, 2010, Dr. Griffin noted that the plaintiff was using a wheelchair and denied having significant hip or thigh pain. (Tr. at 278.) On June 30, 2010, Dr. Griffin noted that the plaintiff was using a wheelchair without complaints. (Tr. at 276.) Dr. Griffin's medical examination revealed that the plaintiff's surgery incisions were well-healed, the swelling had resolved, the plaintiff had a nontender calf and well-maintained motion in the ankle and toes, he denied pain to passive range of motion in the hip, and his X-rays showed signs of progressive healing. (*Id.*) Dr. Griffin told Plaintiff that he would be able to begin weight bearing on July 14, 2010, suggested physical therapy to help with gait training and strengthening, and refilled Plaintiff's Lortab prescription at the plaintiff's request. (*Id.*)

On September 28, 2010, Dr. Griffin's notes show that Plaintiff was ambulatory with a walker and was making progress returning to functional activities. (Tr. at 290.) Dr. Griffin noted that Plaintiff's thigh swelling had resolved and he was nontender to palpitation or range of motion in his hip, although he had some pain in his thigh region with deep palpitation near his femur fracture. (*Id.*) Dr. Griffin noted that the X-rays showed Plaintiff's acetabular fracture was healed, but the femur fracture was not

completely healed. (*Id.*) Dr. Griffin told the plaintiff that although his femur fracture was not completely healed, he believed it would continue to consolidate and that no further intervention would be required. (*Id.*) Dr. Griffin recommended that Plaintiff continue weight bearing and prescribed Darvocet, recommending that Plaintiff wean himself off the medication over time. (*Id.*)

Dr. Griffin indicated on his treatment notes for November 17, 2010, seven months after the accident, that Plaintiff's fractures were healed. (Tr. at 320.) He instructed the plaintiff to wean himself off use of his cane as his gait pattern improved. (*Id.*) He continued to prescribe Plaintiff Darvocet for pain, but only upon the plaintiff's request, and encouraged Plaintiff to take the medication on a sparing basis. (*Id.*) This medical treatment history does not support the plaintiff's contention that the medication he took was ineffective or induced side effects. (Tr. at 47.) The medical history provides no evidence that Plaintiff complained about ineffectiveness of his medication to his treating physician, instead showing that the plaintiff continued to ask for medication to be prescribed. (Tr. at 276, 320.) This medical history does provide evidence that Plaintiff's treatment was generally successful in treating his symptoms and supports the ALJ's RFC.

Second, the plaintiff testified that he had several limitations as a result of his

accident, including an inability to stand for more than twenty minutes, inability to sit for more than two hours, and inability to walk for long without having to stop. (Tr. at 46-47, 51.) The ALJ's RFC is consistent with these limitations. (Tr. at 27-28.) The plaintiff additionally testified that he needed to prop his leg up for around four hours every day during standard working hours. (Tr. at 51-52.) No objective evidence exists in the record to support the existence of these limitations, to the extent they are inconsistent with the ALJ's RFC, besides the plaintiff's own testimony.

    Third, Dr. Richard Whitney, the non-examining state agency medical consultant, determined in his medical opinion that Plaintiff's complaints concerning problems "lifting, squatting, standing, walking, kneeling, stair climbing, and completing tasks" were credible on the date of his RFC assessment, November 19, 2010, but were not expected to last 12 months after the alleged onset date. (Tr. at 314.) State agency physicians are highly qualified physicians and are experts in Social Security disability evaluations. 20 C.F.R. § 404.1527(e)(2)(I). Based on his examination of the objective medical evidence, Dr. Whitney generated an RFC that was less restrictive than the ALJ's later RFC for light work. (Tr. at 310.) Dr. Whitney's opinion is an expert medical evaluation that provides evidentiary support for the ALJ's RFC, even though the ALJ only chose to give the opinion "some weight" because Dr.

Whitney did not adequately consider the claimant's subjective complaints. (Tr. at 31.)

The plaintiff also argues that the ALJ should have exercised his power to order a consultative exam (CE) for the plaintiff. (Doc. 9 at 9-10.) While the ALJ does have the power to order a CE, the regulations make it clear that the power is discretionary. 20 C.F.R. § 404.1519a(b) ("[w]e may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient . . . ."); *see also* 20 C.F.R. § 416.917. It is reversible error for an ALJ not to order a CE when such an evaluation is necessary to make an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1998). However, a CE is not required when the ALJ is able to make an informed disability determination without ordering one. *Id.* at 1210. The ALJ's determination need not be made with absolute certainty; the standard of review requires only substantial evidence to support his determination. *Id*. Sufficient evidence exists in both the plaintiff's medical history and in the plaintiff's own testimony concerning his limitations to support the ALJ's determination, and therefore the ALJ was not required to order a CE.

The plaintiff also draws attention to the ALJ's power to ask for and consider the opinion of a medical expert (ME). (Doc. 9 at 10.) The regulations make clear that the power to ask for an ME, like the power to order a CE, is discretionary. 20 C.F.R. §

404.1529(b) ("[t]he adjudicator(s) may ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms.") The ALJ determined that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 28.) It was not necessary for the ALJ to seek ME testimony regarding whether Plaintiff's impairments could reasonably be expected to produce his symptoms when he had already reached a conclusion favorable to the plaintiff on that issue.

An ALJ has the responsibility to assess RFC based on all the evidence in the record, and the plaintiff generally has the responsibility of providing the evidence used to determine the RFC. 20 C.F.R. § 404.1545(a)(3). When making his RFC finding, the ALJ discussed all of the evidence on the record and included appropriate restrictions based upon Plaintiff's medical history and testimony. (Tr. at 28-31.) Substantial evidence exists to support that RFC, and therefore the ALJ was not required to seek an MSS, order a CE or seek ME testimony to further develop the record.

    B.    Threshold Period of Disability

Plaintiff contends that the ALJ erred by finding that the Plaintiff was not disabled for the threshold twelve-month period. (Doc. 9 at 5.) As a threshold matter to establish

disability, the plaintiff must establish that he was unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or that lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). As discussed above in Part A, substantial evidence supports the ALJ's RFC that Plaintiff was able to perform a range of sedentary work within twelve months, and therefore supports the finding that Plaintiff did not satisfy the threshold period of disability. The ALJ found that Plaintiff was not disabled from the time of the alleged onset date, April 9, 2010, through the date of the decision, January 27, 2012, because there was substantial gainful activity the plaintiff could still engage in. (Tr. at 32.) This finding therefore necessarily includes a determination that Plaintiff was not disabled for the twelve months following the alleged onset date.

On November 19, 2010, Plaintiff received a "durational" denial (Tr. at 70), acknowledging that his condition was severe enough at that time to prevent him from working but was expected to improve by twelve months after onset. (Tr. at 65.) As noted, on that date Dr. Whitney generated an RFC assessment stating the plaintiff could perform light work as of April 9, 2011. (Tr. at 309-16.) Plaintiff apparently argues that the ALJ erred in assessing an RFC for the entire period at issue, and should have

bifurcated his findings. (Doc. 9 at 8-9.) However, the plaintiff provides absolutely no legal authority to support the contention that the ALJ should have bifurcated his RFC or explicitly acknowledged the prospective nature of Dr. Whitney's RFC assessment on Nov. 19, 2010.

Plaintiff also contends that the ALJ erred in his analysis of the plaintiff's visit to Dr. Griffin, his treating physician, on November 17, 2010, the final visit within the threshold period. (Doc. 9 at 6-7.) Plaintiff notes that Dr. Griffin said that the left femur fracture was "apparently" healed, discussed the detrimental effects of tobacco use on fracture healing, and asked Plaintiff to return in three to six months for repeat X-rays and examination, indicating "at least some concern about whether the healing was complete." (Doc. 9 at 6-7.) While these specific lines in Dr. Griffin's treatment report may indicate some minor doubts about whether Plaintiff's left femur fracture was fully healed, it does not change the fact that Dr. Griffin also stated in this report that the plaintiff's fractures were healed, or that Plaintiff's treatment history as a whole supports the ALJ's conclusion. (Tr. at 320.) The medical treatment history and plaintiff's testimony, as a whole, provide substantial evidence to support the ALJ's conclusion.

Plaintiff finally argues that the ALJ committed error by referring to the doctor's

visit of November 17, 2010 as the final visit to Dr. Griffin, and neglecting to mention a subsequent visit on July 14, 2011. (Doc. 9 at 6-7.) The ALJ did discuss the July 14, 2011 visit on the record, but stated that the visit occurred in 2010 as opposed to 2011. (Tr. at 29.) As an initial matter, it is not clear from the record whether or not the ALJ misidentified the date of the visit. Although Dr. Griffin's report is dated "07/14/11", it also states that on the date of the visit the plaintiff was "3 months status post injury and surgery," which would have been July 2010, not July 2011. (Tr. at 318.) Even if the visit did not occur until July 2011 and the ALJ misidentified the date, any factual error here was harmless error because it did not affect the ALJ's ultimate conclusion. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that an ALJ's factual error is harmless if it does not affect the ALJ's conclusion); *Carson v. Commissioner of Social Sec. Admin.*, 300 F. App'x 741, 743 n.3 (11th Cir. 2008) (ALJ's incorrect statement that Plaintiff saw a particular doctor only twice was harmless error where the record does not indicate it affected the ALJ's decision). Even if the ALJ misidentified this visit as occurring during the threshold period when it did not, the doctor's visit of November 17, 2010 within that period stated similar conclusions as to the Plaintiff's condition. (Tr. at 29.) On both visits, Dr. Griffin reported his belief that the plaintiff's fractures were "solidly healed" or "healed," reported that the plaintiff has 4+/5

strength of the hip flexor and adductor muscle groups, and instructed the plaintiff to continue with activities as tolerated. (Tr. at 318, 320.) Dr. Griffin reported on both visits that the plaintiff had an antalgic gait on the left, had no pain in range of motion of the hip, had a nontender calf and was neurovascularly intact distally. (Tr. at 318, 320.) The only significant difference between the two visits was that on July 14, 2010 or 2011, Dr. Griffin reported that the plaintiff had "trochanteric tendonitis." (Tr. at 318.) However, he also reported that he did not believe there was "any concerning ongoing pathology" and prescribed medication which he believed would relieve the plaintiff's symptoms. (*Id.*) More importantly than the similarities between the two reports is that the ALJ's ultimate determination of the plaintiff's limitations was entirely consistent with the limitations expressed by the plaintiff himself, aside from the requirement that plaintiff's leg be elevated. (Tr. at 27-28, 46-47, 51-52.) The ALJ's determination that this limitation was not consistent with the record was not affected by any misidentification of the date of the July 14 doctors visit, and therefore any error was harmless.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Smith's arguments, the Court finds the Commissioner's decision is supported by substantial

evidence and in accord with the applicable law. A separate order will be entered.

Done this 6th day of December 2013.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256